You can proceed. By the way, can you see your timing light? I can indeed, your honor. Okay, then you will need to keep track of your time and I'll just depend on you to reserve whatever time you would like for your rebuttal. I will do so, thank you. You may proceed. Thank you. May it please the court, Andrew Grossman on behalf of the plaintiffs, the Minnesota legislature prescribed that all ballots in this presidential election must be in on election day and that ballots received after election day will not be counted. That legislative mandate carried out Congress's enactment setting a single nationwide election day on November 3rd of this year. The question in this case is whether the Minnesota Secretary of State can override the Minnesota legislature and Congress by committing to accept ballots for additional week after election day. The answer is no. Under the elections clause, the secretary has no power to override the Michigan legislature on the manner of choosing presidential electors and federal law absolutely bars counting votes in federal races that election officials don't even have in hand on election day. The secretary has never contended that the deadline set by the Minnesota legislature and by Congress violates any provision of federal law and so that deadline must stand. The secretary's disregard of controlling federal law threatens election chaos and widespread disenfranchisement of voters who rely on the secretary's claim of authority to set a new deadline. There is no dispute that every ballot accepted after the legislature's election day deadline is subject to challenge and if we are right about federal law then those challenges will succeed and those ballots will be disqualified. The secretary's actions are responsible for that result and we are trying to solve that problem now when voters still have a chance to cast timely ballots. The district court decision didn't reach the merits because it stopped at standing but Mr. Carson and Mr. Lucero are obviously injured by the secretary's actions. They are voters and the secretary's decision to accept thousands of ineligible ballots dilutes their votes as a matter of pure arithmetic. When the vote pool goes up the weight of their individual votes goes down and that injury is no different from the kind of ballot box stuffing with which Baker v. Carr recognized to be a more established injury in fact than the kind of malapportionment that it held to satisfy the case or controversy required. The district court's view that this is just a generalized grievance is backwards. Vote dilution is measured from the point of view of the individual voter and no one disputes the fact that the secretary's policy dilutes the plaintiff's votes. That injury doesn't disappear just because other voters will also be injured. The plaintiffs also have standing as candidates because the secretary's policy concerns the rules governing their own election. Candidates have asserted electors clause violations in cases like McPherson, Palm Beach, and Bush v. Gore. Under Minnesota law ballots are subject to challenge before they are opened and counted. Are these two individuals your traditional candidate? They've already been chosen as the presumptive elector if their candidate wins, correct? If their candidate wins, but of course that's contingent on the election. Correct, but does that make them a candidate in the same way a traditional candidate is running for office? In other words, they step right in if the candidate wins as opposed to anyone voting for them individually. I grant that there is perhaps what would appear to be a layer of indirection, but I think that what's conclusive here is that Minnesota law regards them the same as other candidates. Their election is covered by the same provisions of the election code. Their office is treated the same. It's all in there with the provisions that deal with any other race and any other type of candidate. So I think that as a matter of state law, and keep in mind they would be running for a state office, they are regarded as electors standing. So we know that the constitution directs that the manner of selecting electors is delegated to the legislature. We know that in this case, that is not being implemented because of the consent decree. But is that injury concrete as to your plaintiffs or is that an injury to the legislature? So it's certainly concrete to them as voters, but I take your question to focus on their position as elector candidates. And I think the answer is yes, and it's effectively for the same reason as Bond recognized. They suffered direct harms that would be cognizable under Article 3 due to the Secretary's policy. And so the result is that if they satisfy Article 3, the otherwise satisfy Article 3 standards, then under Bond, they're allowed to bring a structural violation challenge. What is their potential harm? I think the potential harms are many fold, but I think it's worth backing up a little bit. If you look at just in general cases involving vote challenges, ballot challenges, as well as election contests and the like, the ultimate candidate injury there is simply the accurate all of these kinds of cases are litigated for the reason that nobody knows whether a given proposed rule that a litigant is promoting would necessarily result when it's applied to the ballots in the outcome that they're seeking to achieve at the end of the day. And so it's been common ground here among the parties that candidates can lodge challenges to ballots in this election and under Minnesota law such that the same challenge could be brought at 8.01 on election day. And if the plaintiffs here have standing to bring that challenge, which I take to be undisputed, there certainly would seem to be no reason that they couldn't bring it now. And we've identified some additional concrete harms as well. I think the first is... Hold on a second. You're suggesting it's undisputed that a candidate could bring a closed? Is that what you say is undisputed? I'm saying in this case, your honor, at 8.01 PM, the statutory deadline is 8 PM. And if the secretary were to violate the statutory law and continue accepting ballots, those could be challenged and any candidate could seek an injunction. A political party could and potentially under Minnesota law, voters could as well. So, and we argued as much... What is your best case for that proposition that a candidate has standing based on simply the interest in the accurate counting of votes? We cited in our brief Gallagher, I believe Hunter regards that as well. And then there's also Bush versus Hillsborough County canvassing board, which was a challenge by Bush as a candidate with respect to the qualification and eligibility of particular ballots. And Gallagher and Hunter are district court cases? They are, although I would also point the court to the Sixth Circuit's preceding decision in Hunter, which recognized some of these injuries under the rubric of irreparable harm, which we think is similar to the standard that would apply, or at least something that qualifies as irreparable harm to a party would surely satisfy an injury in fact as well. I want to go back to Judge Kelly's opening question about the status of electors as candidates. What's your best case? Do you have a case? Is there a circuit, for example, a circuit court case out there that deals with electors as a party and this issue of whether they are actually candidates and have standing as candidates? Your Honor, to be perfectly candid, there are not many cases involving electors. The one that immediately comes to mind is McPherson versus Blacker, which was brought by elector candidates. There's just not, there's not much out there, is there? There simply is not one way or the other. So, if I could move on, I'll turn to the merits. Well, let me ask you, following up on that, kind of a related matter, you know, I wonder if the reason there's not many, there are like no cases out there, is because normally it's the political party or a actual, the nominee of a political party that's bringing a challenge like this. And in this case, what is very, what stands out is the fact that the political party organizations were parties as intervenors in the state court. And as the appeal from that consent decree moved forward, they dropped out and they permitted the appeal to be dismissed. What's the significance of that? If they're not interested in this case from the standpoint of becoming parties and challenging themselves, what's the court to make of that? Well, Your Honor, a couple of things. First, I think the reason that there are so few electors' cases is just, it's for the same reason there are so few electors' clause cases. This issue comes up at most once every four years, and even then there often isn't a lot of litigation on it. So, in that respect, it's unlike other types of election law disputes. With respect to the state court litigation, as well as the status of the plaintiffs here as electors, I think the court potentially could sidestep a lot of this simply by premising their standing on their status as voters. Our view is that the law on that is— I'm kind of moving past the standing, and I'm just asking about the absence of any political party or any political candidate as a party to this, making the kind of challenge that these electors are participating in the state court action, and then withdrew, so to speak. Yes, Your Honor. So, with respect to the party organization's participation, we're not aware of any case law holding that a voter's ability to challenge under federal law actions that dilute the weight of his vote in federal court is affected by anything that a political party has or hasn't done in the past. The interviewers raise a collateral attack type argument, but a political party is simply nothing more than a voluntary association, and while in some instances it may represent the interest of its members, particularly the members of the actual committee, in this instance, you'd be litigating voting rights-related issues in the courts, and this issue—like I said, I've never seen a single instance where a party has been held to be in such close privity with a political party that that individual's voting rights are simply subject to res judicata, and I don't think that Minnesota law, which is what would be applicable here, actually extends that far, given that, as the Minnesota Supreme Court said in Henschel, the type of connection that you need for privity is something like a relationship in a state or blood or law, some type of direct and active—either that or a direct and active participation in the earlier litigation, and that certainly wasn't the case here. The plaintiffs here did not participate at all in the state court litigation, and as for the political party, it's a political party. It represents, in a certain sense, many, many voters who are either members of the party or may have a tendency to vote for Republican candidates, but at the same time, it certainly is not the exclusive protector of their rights as voters, and so that's not something that we think has been—it certainly has not been recognized as a matter of federal law, and it's not something I think that Minnesota's law and privity could possibly be extended to reach. The same point, I think, prevails with respect to the Secretary's for abstention. Again, there simply was no participation in the case, and the one case that we could find from the First Circuit that did involve this type of associational relationship surveyed the case law in this area and recognized simply that abstention had never really been applied on that type of basis based on an associational relationship as here. If I could turn to the merits, I'd begin with the Elector's Clause claim, and our view is simply that it's controlled by Bush v. Palm Beach County. Before you do that, let me just ask, since you are proceeding to the merits, is it your position that our court in the posture that we find the case would even get to the merits? Or are we solely to look at the standing issue? The district court decision denied our motion for a preliminary injunction, and so that is what is up before this court, and so we think—and so, yes, this court can reverse the district court's denial of that motion. The court would certainly have it within its authority to simply vacate and remand if the court chose to do so as a matter of discretion, but we think that giving the timing considerations at play in this case, that that would be a disservice, frankly, to all parties. So, with respect to the Palm Beach case, the Supreme Court vacated an order of the Florida Supreme Court setting recount procedures because it appeared to contradict the clearly expressed intent of the legislature. Palm Beach holds that the intent of the state legislature controls when it is exercising its authority under the Elector's Clause, and that its authority cannot be circumscribed even by state constitutions. Bush v. Gore reaffirmed that holding. When it halted a recount, they couldn't lawfully be completed by the deadline set by the Florida legislature. So, you put those two together, and what we have here is essentially this case. The Minnesota legislature set a clear deadline, and there is no argument that that deadline violates federal law. It is simply absent from any of the briefing in this case. Counsel, assuming that you're correct on the merits, does the Purcell principle counsel against us doing anything about it at this point? Your Honor, I don't think it does for two reasons. The first is that this is the type of issue that often is. There is simply not the same concern about last-minute disruption that would apply with respect to most cases where Purcell is raised. In fact, it is quite the opposite. Here, a ruling by the court on the merits would actually serve to avoid disruption of the election and would serve to allow voters to vote confidently and to understand what rules will govern the counting of their ballots. And the second is simply, just as a categorical matter, the types of election law changes that have been recognized in Purcell-type cases, again, they just haven't been this type of post-election issue, or at least something that concerns the counting of ballots. They've typically gone towards state election law requirements that are things that are carried out in the pre-election period rather than after election day. If I could, Your Honors, I see my time is running, and so I would reserve the remainder of my time for rebuttal. Okay. Thank you very much. All right. Mr. Marisam, am I pronouncing that correctly? That's correct, Your Honor, Marisam. All right. You may proceed. Thank you. May it please the court, Jason Marisam for the Minnesota Secretary of State Steve Simon. There are many reasons why this appeal fails, but I want to emphasize here is the state interest in minimizing voter confusion and in having a smooth election process really just days away from the election. There is no question that if this court were to issue an injunction at this late date, there would be massive disruptions to the election administration process and voter confusion and potential disenfranchisement. Counsel, in that regard, what caused the confusion here? Was it the Secretary of State's actions, or would it be the relief sought by the plaintiffs? To that point, Your Honor, we have tried throughout to make sure that this was cleared up with certainty. That was in our interest. So when this was at the state court, we decided we want to get this through the court process as quickly as possible so there's resolution before voting begins on September 18th. So we filed the consent decree in the middle of July. We had a hearing on July 31st that counsel for the Trump campaign, counsel for the Republican Party, counsel for the Republican National Committee participated in. August 3rd, you get the consent decree. There's an immediate direct appeal to the Minnesota Supreme Court asking for expedited Minnesota Supreme Court set a schedule that would have had this fully resolved before voting began and even had enough time for someone to go to the U.S. Supreme Court on direct review if they wanted to. But then just days after that, we got contacted by counsel for the Trump campaign, the Republican Party in Minnesota, the RNC, and the RNCC saying they want to walk away. We were hesitant to agree to that because we wanted certainty. We didn't want this to come up again. We thought the worst case scenario would be where we are now arguing over this on the eve of an election. We have a strong interest. So we said, okay, only if you agree to waive your rights to challenge this in any judicial forum. And that's what they did. That's what they did. But the electors weren't even certified as candidates for elector until sometime later, isn't that right? That's shortly thereafter. That's correct, your honor. So two points on that. First, they're trying to have it They're saying if you vote for the Republican nominee, President Trump, on the ballot, that's a vote for us. So we're candidates. However, we weren't in privity with them. We have nothing to do with them. And we're not bound by the fact that the Trump campaign has walked away from this and waived its rights. We've got nothing to do with them when it comes to waiver of rights. But if you vote for the Trump campaign, it's a vote for us that we have standing. I don't see the months before the election. And they waited one month to bring their lawsuit. And they offer no reason for waiting one month. They just say, we shouldn't be penalized for waiting a month. That's it. In this context, yes. In terms of voter reliance and confusion, what should Minnesota voters be relying on the plain language of the statute or the guidance from the Secretary of State? Your Honor, when the ballots started going out on September 18th, they came along with ballot instructions that in large letters say the deadline is a postmark deadline for this election. More than 1.7 million ballots that have been sent have that. That started on September 18th. But the reason I ask that question is that as I understand the consent decree, the Secretary of State agreed to provide guidance to local election officials. I'm wondering, does that have the force of law or does the statute have the force of law? The county officials rely, the Secretary has the authority to issue rules and guidance on when the deadline is. And the counties, this is under Minnesota Supreme Court law, the counties rely on what the Secretary says as guidance. Now, I want to get to a point here because the two reasons that they offer to say that they're on time, one is to say we only waited a month. Well, that's a crucial month when voting is beginning and the election is only two months away. They offer no reason for why they waited a month. In this context, that's too long. Secondly, this idea that it's undisputed that this dispute will come up later is just incorrect. It is too late now to litigate the rules of the road and the rules of the election. It doesn't magically become time to litigate the rules of the election after the election. After the election, you can litigate how the rules are applied, but you can't litigate the rules. That's common sense. And an example of this is what the Supreme Court just did in its shadow docket out of South Carolina case called the Andino v. Middleton. There, a federal district court in South Carolina in late September issued an injunction enjoining enforcement of South Carolina's witness requirement for the general election. That was late September. The Supreme Court flipped that on October 5th. But what they said is, if you've already cast a ballot without the witness, that ballot is valid because it was cast based on the rules that existed at the time, the rules set in place by the injunction. We're not going to go after the ballot was cast and say, we're changing the rules that applied when you cast it. That's just common sense. And it's highlighted by what the Supreme Court did in Andino. So the argument that after the election, there's going to be a contest to the rules. No, it is too late now. It'll be too late in two weeks or one week from now. Also, the reasons that Purcell exists applies with even greater force if you're challenging the rules after the election. You can challenge how the rules are implemented, but you can't challenge the rules themselves. So they wait. So first I'll say they waited. The consent decree has been around for three months. They waited until it was around for nearly two months to challenge it. Yes, they weren't certified as electors, but their only response is to say we'd only been electors for a month. That seems to concede that to the extent they're suing as individual voters, they absolutely waited too long. They have no explanation for why they didn't sue in their capacity as individual voters sooner. They're just bringing up this idea that we waited a month from when we were electors. And I'll just reiterate, there are two problems with that. That was a crucial month. That was when voting began, when the 1.7 million absentee ballots with the instructions with the rule were going out. And the second problem, how they disassociate themselves as electors for President Trump. President Trump's campaign has walked away and waived its rights here in the Republican Party too. So unquestionably, if there's an injunction at this late date, there will be the voters with their ballots telling them in large letters to make sure every voter gets this, to say, no, the deadline is changed on the eve of the election. There is no way to make sure that every voter gets that, that every voter can get their ballot in on time. There'd be massive problems for the voters on that end. There'd also be huge confusion from an election administration perspective of what we do. I'll note that the only claim they're bringing is as to the presidential election. They're not challenging it, the consent decree as it applies to state races. This court doesn't have jurisdiction as it would apply to state races. And they're not challenging it as it applies to federal elections for Congress or Senate. So even if there were an injunction, it would just apply to the presidential election and it would cause this problem of segregating the ballots for the presidential election. We need to communicate to voters that there are different deadlines. If you want to vote for president, different deadlines, if you want to vote for these other things, get them in. Deadlines changed the last second for the presidential election. That would be really other chaos. And I want to emphasize secretary of state did everything it could to make sure this was entirely wrapped up. We had all the normal players party to the litigation at the Minnesota Supreme Court. Can I ask to follow up on your statement that this applies only to the presidential election? If we're looking at the manner prescribed by the legislature or directed by the legislature, why wouldn't, what is the difference between the, in that sense, the electors clause and the elections clause? The precedent is pretty similar for the two and we rely on our merits on elections clause. I would just say they're not bringing an elections clause claim. They're not bringing a claim related to congressional elections in this case. Would your view be that the same, we would take the same approach to both? If there was a claim under each? If you were to reach the merits, I think for practical purposes, I think they're pretty tied together with the Smiley precedent and Arizona redistricting precedent. If you were to reach the merits there. I'm running out of time here. I'm going to pass it off to Ms. Khanna, but I would just reiterate the state interest in having a smooth election and that everything we did was to make sure that we were locked down and certified with this under control under the Minnesota Supreme Court. All the institutional players were there and they walked away, waived their rights to challenge it. We thought we had certainty until these two plaintiffs at the last moment who had sat on their rights for over a very long time. Ms. Khanna. Thank you, your honor. Good afternoon. May it please the court, Aba Khanna for the intervener appellees. The Supreme Court has issued a host of decisions in just this year regarding election laws and these rulings clearly communicate two essential propositions. First, that elected officials should be allowed to determine how to conduct elections in accordance with state law without interference from the courts. This is a takeaway. Counsel, that proposition would only seem to hold true where the electors clause is not called into question, where you're only dealing with state provisions. Right, your honor. I believe that that's true with respect to all of the Supreme Court's rulings, especially in Alabama, Pennsylvania, Rhode Island, and even the Wisconsin ruling, where the state has opposed the request by plaintiffs to expand voting rights. And the court has said we defer to the state court, the state's judgment there. Here, the state officials have endorsed the consent decree, and the state court has approved it, and there's really not an authority from the Supreme Court saying that this federal court should overreach and should undo that. In each of these cases, the Supreme Court's cases, the court deferred to the considered judgment of elected state officials and rejected efforts by federal courts to interfere with the state's chosen election regime. And in this case, what is the state's chosen election regime? Isn't it codified in Minnesota statute 203b.08? Unpart of the legislative scheme enacted by the Minnesota legislature, but a very integral, another part of that legislative scheme is 204b.47. And that statute specifically contemplates that a state court can decide that another provision of Minnesota election law cannot be implemented, and then authorizes and in fact requires the secretary to adopt alternative procedures. The electors here focus very heavily on the first part of the election code, but seem to ignore the second part of the election code, and this court, and neither the court nor the electors can pick and choose which part of the legislative scheme to defer to. Counsel, in that regard, why can't that statute be implemented? The statute cannot be implemented because a state court order decided it could not be implemented. At whose behest? Well, the statute, the statute was, the consent decree was filed on behalf of both the interveners and the secretary, but it was ordered by- Isn't that a self-fulfilling prophecy then? Not at all, your honor, because that consent decree was heavily litigated. It was after a filing of a motion for preliminary injunction that was thoroughly opposed by all the Republican committees that were at the table during that time. There was evidence was provided, and not only was there a disagreement about the entitlement to preliminary injunctive relief, the same Republican committee specifically challenged the consent decree itself, saying the consent decree itself is unlawful, and all those issues were heard by the state court. All those issues were heard at an argument that lasted over three hours by all of these parties, and it was- The consent decree was not just a signature by the state court. It was accompanied by a fulsome order explaining the reasoning for it. Not only was there a likelihood of success on the merits, but the state court rejected the challenges to the lawfulness of the consent decree. The issue of the lawfulness of the consent decree was litigated in state court, and the court order specifically then, as a result, found that the election law, that provision of election law cannot be implemented in accordance with 204B.47. Your honor had asked Mr. Marisam whether the secretary's guidance is- whether voters should follow the guidance or whether that has the force of law. The thing that has the force of law is 204B.47, and certainly the state court order has the force of law until another court says otherwise. So to the extent that voters have been relying on following the law and doing everything right, not only do their ballots have printed on them a specific postmark deadline, but they have done everything right to follow the law as it has been established by the legislature in 204B.47 and by the state court in actually issuing the- issuing and entering the consent decree and its accompanying order. Counsel, how broadly is the word manner interpreted under the electors clause? I mean here we're talking about something I think we all agree as part of the manner of the appointment of the electors, the additional time, but are there other aspects of the election process that would fall into manner that aren't quite so extreme that wouldn't be subject to the clause? I suppose so, your honor, and I'm not sure I have a very good answer as to where that line would be. I suppose one could make the argument that the electors clause here really just deals with the manner in which the appointment of the electors, that's very narrow in some senses, but the supreme court has generally tied the elections and the electors clause together as functional equivalents. As noted in Justice Roberts' dissent and in Foster v. Love, they've seen these two provisions as more or less the same when it comes to interpretation of what the legislature can and cannot do, and here the legislature has specifically delegated authority to the secretary in the event that the state court orders that election law cannot be implemented, which is exactly what happened here. The supreme court's authority also makes clear that under Purcell and his progeny, federal courts should not issue late hour injunctions that threaten to throw elections into turmoil. Yesterday's Wisconsin ruling drives home that point. Chief Justice Roberts stated, intervention in the thick of an election season to enjoin enforcement of a state's laws is improper. Justice Gorsuch expressed that last minute changes invite confusion and chaos and erode public confidence in electoral outcomes, and Justice Kavanaugh wrote that the court's precedents recognize a basic tenet of election law. When an election is close at hand, the rules of the road should be clear and settled. That is because running a statewide election is a complicated endeavor. The rules of the road here were clear and settled when these issues were litigated, brought and litigated, and thoroughly opposed, and finally, the appeal dismissed in state court. In fact, the electors cannot point to a single case where a federal court has successfully enjoined a voting procedure one week before an election. The Purcell doctrine was developed precisely to avoid the type of relief that the electors seek here. Justice Kavanaugh further expressed that even seemingly innocuous late-in-the-day judicial alterations can interfere with a state's election administration, and the injunction that the electors seek here would be anything but innocuous. The ballots in voters' hands right now include a postmark, instruct about a postmark deadline, the exact same deadline that was in place for the primary several months ago. Not only would a sudden course change on the eve of the election confuse the electorate, relying on the explicit rules in place since before the primary, but the electors claim under federal law would require interpretations so novel and unorthodox on a preliminary injunction, no less, and it would cast doubt on election procedures used across the country and by tens of millions of voters. First, they would have this court invalidate postmark deadlines, even though more than a dozen states have used these deadlines for years, and no court has ever them to be preempted. When was the primary? It was in August, Your Honor. Do you have a date offhand? I don't, I'm asking, but I just don't recall the date. I apologize. I don't have that at the ready. I want to say August 24th, but certainly Mr. Marrison will probably have that at the tip of his tongue. But it was, it followed the consent decree. It followed the consent decree. Is there any discussion in the court below regarding the postmarking of prepaid mail? There was, Your Honor. And what is the situation? And the evidence in the state court specifically showed, the unrebutted evidence, showed that prepaid ballots, ballots are postmarked. The U.S. Postal Service has a policy of marking them, of postmarking them, and we submitted the authorities from the U.S. Postal Service system who showed that they had, in almost every instance, that post ballots are postmarked. That is the rule and that is the practice. Your Honors, just this week, just last week, Your Honors issued a stay in the Organization for Black Struggle versus Ashcroft. And the conclusions in that case weren't rejecting the appellant's, the elector's appeal in this case. Now, as an initial matter, the question before this court is not whether a postmarked deadline or presumption is required to protect voting rights under an Anderson-Burdick analysis, but whether it is prohibited by federal law from extending the receipt deadline. This case is therefore in a very different posture, both from the Organization for Black Struggle case and from the Wisconsin case decided by the Supreme Court last night. Even if this court disagrees that the state has to expand voting accommodations, it does not answer the question of whether a state's elected officials can do so consistent with federal law. And this court is not being asked by the electors or anyone else to second guess the judgment of the state court, since that is not an issue before it. Second, in Organization for Black Struggle, the state opposed plaintiffs' requested injuncted relief. And this court deferred to the state's interest in that case. Here, too, the state opposes the requested relief and the state's interest is in enforcement of the consent decree. Third, as in the previous case, the state will suffer irreparable harm. And I see that I'm out of time, Your Honor, and if you allow me to finish my point, I understand, but if you would like me to, it's fine. Go ahead. Finish your thought. Thank you, Your Honor. The state would suffer irreparable harm, not just because the election will be thrown into turmoil a week in advance, but also because it would preclude enforcements of the state's enacted legislation in 204B.47. There's really little question that the circumstances here under the letter of that statute. While the electors may quibble about how the court order came about, indulging their request would require this court to weigh the wisdom of that legislation rather than simply apply it as written. And finally, Your Honor, as this court mentioned in Organization for Black Struggle, the fair and orderly operation of elections does not warrant an injunction here. There's nothing fair or orderly about electors' requested relief at the courts. Thank you, Your Honor. All right. Thank you very much, counsel. Mr. Grossman, you have two minutes and 48 seconds. Take a little bit of extra time. I allowed Ms. Khanna to finish her thoughts, so we'll tack on a bit of time to your rebuttal. Thank you, Your Honor. I'd like to start by addressing Minnesota statute section 204B47. That provision does authorize the secretary to adopt alternative election procedures when the election code cannot be implemented as a result of an order of a state or federal court. But I will note that Bush v. Gore rejected reliance on a very similar Florida statute that conferred remedial authority on state courts when it was applied in a way that contradicted a clear deadline set by the legislature. There is a serious constitutional doubt whether a legislature can delegate its election clause authority to determine the manner of appointing electors. If you take McPherson at his word... Can I ask you the question, how broad is the term manner then? I think that is an interesting question. But I think that if you look at Bush v. Gore, the most recent statement on this, as well as Bush v. Palm Beach County, it certainly goes to things that involve the counting of ballots. And so the provision that's at issue here is certainly encompassed within that. As to what falls outside of that core, I think anything that concerns the manner, and as my friend said, there are, you know, the cases at least under the elections clause have been relatively broad in construing the word manner with respect to elections. Council, let me ask you this. You know, this is a case where, as your colleagues mentioned, this consent decree was apparently a product of negotiation between a lot of involved. No other state entity is before the court to defend its laws, and the Supreme Court in this Republican National Committee v. Common Cause Rhode Island and the Circuit Court in that situation. So why, you know, if the state interest, the legislature is not before us defending its authority, what do we make of that? Does that weigh against you? Your Honor, I of course cannot speak for the legislature, but of course I think the answer is no. I think what's significant here is that neither of my friends disputed that this exact same issue could be raised in post-election litigation. Mr. Merriam's view is that it would fail on the merits, but he didn't dispute that the issue could be raised and it would have to be decided. And so I think at the end of the day, whether the legislature here is not, doesn't really answer the question, and it certainly doesn't implicate the equities of this case, given the availability of post-election relief. On a similar note in that context, once, I understand your position regarding on the privity regarding the parties, but what about the campaign? As I understand Minnesota law, the electors must cast their votes for their party's candidate, and that's already been decided. So if their candidate wins, that's who they vote for. How is that not different than the parties? In other words, why aren't your clients in privity with the campaign itself? Well, Your Honor, I think there are two reasons. One is they didn't have that interest at the time any of the relevant events in the state court litigation occurred, and privity typically concerns events and relationships that occur prior to the events that go on in state court, often involving control and participation in the litigation itself. For privy to arise thereafter would seem an unusual thing, and I don't think any party has supported case law and supported that principle. In addition, and it may seem formalistic, but I will note that the electors here are running for a state office that is separate from the federal office that, if their candidate were to prevail, he would ultimately occupy. They have a duty under that Minnesota law does involve voting for the candidate to whom they're pledged, but that is something that they get to do, and it is a duty and obligation that they have to carry out under state law in a state office. And so in that respect, their interests and the interests of Donald Trump as candidate are different. They're running for different offices. If I may, I would like to briefly address simply the equities here. Go ahead and wrap up pretty quickly. Take a minute or so. We've asked some questions, so counsel took a little bit of extra time, but just take a minute or so. We'll wrap it up. Thank you, your honor. So in our view, the equities here are simply intertwined with the merits. If the secretary's new deadline is unlawful, then what follows is irreparable injury to the plaintiffs, to the public, and frankly to the state as a whole. And some of those injuries like vote dilution and disenfranchisement, those have been recognized in case after case as per se irreparable injuries that weren't injunctive relief in practically every single case. There's a lot going on here. There are lots of different issues. My friends have raised numerous justiciability concerns, but I think at least on the equities, the point is clear that if we prevail on the merits, if we are right about these questions of federal law, then it is simply imperative that these issues be decided at this time. And so with that, we thank the court, of course, for expediting this appeal, and we would ask you to reverse the decision below. All right. Judge Ross, any other questions? No, thank you. Judge Kelly? No, nothing further. Thanks. Okay. All right. Well, thank you, counsel. The case has been well argued and it is submitted. I thank you for your participation this afternoon and for your accommodating schedule of the court. Ms. Smith, do we have anything?